UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SALLY B. BORDNER, | |
| Plaintiff, | CIVIL ACTION NO. 3:20-CV-01165 |
| v. | (MEHALCHICK, M.J.) |
| KILOLO KIJAKAZI,[1] | |
| Defendant. | |

# MEMORANDUM

Plaintiff Sally B. Bordner ("Bordner") brings this action under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. (Doc. 1). This matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. §636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 6). For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, it is hereby ordered that the Commissioner's decision be **AFFIRMED**.

---

[1] The Court has amended the caption to replace, as the named defendant, Acting Social Security Commissioner Andrew Saul with his successor, Social Security Commissioner Kilolo Kijakazi. See Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

I. **BACKGROUND AND PROCEDURAL HISTORY**

On March 31, 2017, Bordner protectively filed an application for Title II disability insurance benefits, claiming disability beginning January 31, 2014, due to bipolar disorder, severe depression, anger and frequent mood swings, history of Lyme disease, and severe seasonal affective disorder. (Doc. 9-3, at 2-3). The Social Security Administration initially denied the application on September 6, 2017, prompting Bordner's request for a hearing, which Administrative Law Judge (ALJ) Howard Kauffman held on January 14, 2019. (Doc. 9-2, at 16). In a written decision dated March 22, 2019, the ALJ determined that Bordner is not disabled and therefore not entitled to benefits under Title II. (Doc. 9-2, at 26). The Appeals Council denied Bordner's request for review. (Doc. 9-2, at 2).

On July 9, 2020, Bordner filed the instant action. (Doc. 1). The Commissioner responded on March 18, 2021, providing the requisite transcripts from Bordner's disability proceedings. (Doc. 8; Doc. 9). The parties then filed their respective briefs with Bordner alleging two bases for reversal or remand. (Doc. 13; Doc. 14; Doc. 15).

II. **STANDARDS OF REVIEW**

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers

in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).[2] Additionally, to be eligible to receive Title II benefits, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131.

### A.  ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled, the "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now familiar five-step analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; *see* 20 C.F.R. § 404.1512(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1512(a)(1).

### B.  JUDICIAL REVIEW

The Court's review of a determination denying an application for Title II benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r Soc. Sec.*, No. 19-1268, 2019 WL 6998150, at *1 (3d Cir. Dec. 20, 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted).

---

[2] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Bordner is disabled, but whether the Commissioner's determination that Bordner is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

### III. THE ALJ'S DECISION

In his written decision, the ALJ determined that "the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act, through June 30, 2014, the date last insured." (Doc. 9-2, at 26). The ALJ reached this conclusion after proceeding through the five-step sequential analysis provided in 20 C.F.R. § 404.1520(a)(4).

#### A. STEP ONE

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in substantial gainful activity, the claimant is not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b). Substantial gainful activity is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. § 404.1572(a)–(b). The ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574(a)(2). Here, the ALJ determined that "[Bordner] did not engage in substantial gainful activity during the period from her alleged onset date of January 31, 2014, through her date last insured of June 30, 2014." (Doc. 9-2, at 18).

#### B. STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment—or a combination of impairments—that is severe and meets the 12-month duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits" the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. § 404.1520(c). If, however, a claimant establishes a severe impairment or combination

of impairments, the ALJ proceeds to consider step three. Here, the ALJ found that Bordner had two severe impairments: lupus and depression. (Doc. 9-2, at 19). Additionally, the ALJ found that Bordner had the following non-severe impairments: bilateral carpal tunnel syndrome, anger and frequent mood swings, bipolar disorder, and Lyme disease. (Doc. 9-2, at 18).

    C.    STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. I, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. § 404.1520(a)(4)(iii). The sections in this appendix are commonly referred to as "listings." Here, the ALJ determined that neither of Bordner's impairments, considered individually or collectively, met or medically equaled the severity of a listed impairment. (Doc. 9-2, at 19-21).

    D.    RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ evaluates the claimant's residual functional capacity ("RFC"), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ considers all of the claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). This involves a two-step inquiry according to which the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R.

§ 404.1529(b)–(c).

Here, the ALJ found that while Bordner's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Bordner's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 9-2, at 22). The ALJ determined that Bordner had the, RFC "to perform medium work as defined in 20 CFR § 404.1567(c) except she can engage in occasional interaction with coworkers and supervisors, and no interaction with the public." (Doc. 9-2, at 21).

E.  STEP FOUR

Step four requires the ALJ to determine whether the claimant had, during the relevant period, the RFC to perform the requirements of his or her past relevant work regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn the requirements of the work. 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed the work or as ordinarily required by employers throughout the national economy. *Garibay v. Comm'r Of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82–6). "If the claimant can perform [her] past relevant work despite [her] limitations, [she] is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)). Here, the ALJ determined that through the date last insured, Bordner was unable to perform her past relevant work as a medical secretary. (Doc. 9-2, at 24). Thus, the ALJ proceeded to step five of the sequential analysis. (Doc. 9-2, at 24).

F.   STEP FIVE

At step five of the sequential analysis, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). If a claimant can adjust to other work, he or she will not be considered disabled. 20 C.F.R. § 404.1520(a)(4)(v). Here, considering Bordner's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Bordner could have performed. (Doc. 9-2, at 24-25). In making this determination, the ALJ relied on the expertise of the vocational expert, who testified that Bordner could have performed the requirements of occupations, such as a housekeeper, a mail clerk, and a copy machine operator (occupations with open positions ranging from 16,000 to 304,000 nationally). (Doc. 9-2, at 25). Accordingly, the ALJ determined that Bordner was not disabled and denied her application for benefits. (Doc. 9-2, at 25).

**IV.   DISCUSSION**

Bordner advances two arguments on appeal. (Doc. 13, at 2). Specifically, Bordner argues that the ALJ erred by (1) failing to find the opinion of her treating physician, Ann Stipe, Ph.D. ("Dr. Stipe"), to be persuasive; and by (2) determining that Bordner had the RFC to perform medium work on a durational basis because this conflicted with Dr. Stipe's opinion that Bordner would be off task, require frequent breaks, and be absent at a rate of 1-2 days per month. (Doc. 13, at 2, 3-11, 12-14). In response, the Commissioner maintains that the ALJ's decision is supported by substantial evidence and is in accordance with the law and regulations. (Doc. 14, at 13-21).

A. THE ALJ DID NOT ERR IN HIS CONSIDERATION OF DR. STIPE'S OPINION

Bordner's first claim of error challenges the ALJ's consideration of the opinion of her treating physician, Dr. Stipe. (Doc. 13, at 3-11). New Social Security Administration regulations governing the evaluation of medical evidence were effectuated in March 2017.[3] *See* 20 C.F.R. § 404.1520c. The new regulations state that the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §404.1520c(a). The weight given to a medical opinion now depends largely on that opinion's consistency and supportability, which are the same factors that formed the foundation of the rule which prioritized the opinion of a treating source. *Densberger v. Saul*, No. 1:20-CV-772, 2021 WL 1172982, at *8 (M.D. Pa. Mar. 29, 2021) (citing *Andrew G. v. Comm'r of Soc. Sec.,* No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.NY. Oct. 1, 2020)). These factors must be addressed in the decision. *See Densberger*, 2021 WL 1172982, at *8 (citing 20 C.F.R. § 404.1520c(b)(2)) ("An ALJ is specifically required to 'explain how [he or she] considered the supportability and consistency factors' for a medical opinion."). In addition to consistency and supportability, the ALJ must consider – but need not explain – the medical source's relationship with the claimant, specialization, and any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c)(5); *see also Densberger*, 2021 WL 1172982, at *8. "[When] the ALJ has found two or more medical opinions to be equally well supported and consistent with the

---

[3] Bordner filed her claim on March 31, 2017, thus falling under the new regulations which apply to all cases filed after March 27, 2017. 20 C.F.R. § 404.1520c.

record, but not exactly the same, the ALJ must articulate how he or she considered [the remaining] factors . . . ." *Densberger*, 2021 WL 1172982, at *8. Guided by these legal tenets, the Court finds substantial evidence to support the ALJ's consideration of Dr. Stipe's opinion.

Bordner argues that "the ALJ must consider both the supportability and consistency of the medical evidence as well as the treating source's relationship with the Claimant, their area of specialization, if any, and other factors" when determining the persuasiveness of a medical opinion. (Doc. 13, at 3). In assessing the relationship with the claimant, Bordner argues that the ALJ should consider the "(i) length of treatment relationship, (ii) frequency of examinations, (iii) purpose of treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship." (Doc. 13, at 3-4). Bordner contends that the ALJ did not give appropriate weight to Dr. Stipe's opinions because they "are well-supported, consistent and, therefore, persuasive." (Doc. 13, at 3-4).

Further, Bordner argues that the ALJ failed to consider that Dr. Stipe had a long treating relationship with Bordner, and that the ALJ erred in giving great weight to the opinion of Dr. Grutowski. (Doc. 13, at 3-4, 5-6). The Commissioner argues that the ALJ's evaluation of Dr. Stipe's opinion is supported by substantial evidence because Dr. Stipe's opinion is inconsistent with the record as a whole. (Doc. 14, at 13). Additionally, the Commissioner asserts that "[t]he ALJ correctly determined that the evidence was more consistent with and supportive of the milder restrictions found by Dr. Grutowski." (Doc. 14, at 18-19). The Court finds that the ALJ's treatment of Dr. Stipe and Dr. Grutowski's opinions is supported by substantial evidence.

In this case, the relevant period began on the alleged onset date of January 31, 2014, through Bordner's date last insured of June 30, 2014. (Doc. 9-2, at 18). To qualify for

disability insurance benefits, the claimant must establish that she was disabled prior to the date she was last insured. *See* 20 C.F.R. § 404.131; *Matullo v. Bowen,* 926 F.2d 240, 244 (3d Cir. 1990); s*ee also* Lombardo v. Schweiker, 749 F.2d 565, 567 (9th Cir. 1984).

Bordner first sought treatment with WellSpan Behavioral Health ("WellSpan") in 2007, when she appeared for an assessment. (Doc. 9-8, at 21). On February 14, 2014, Bordner underwent a mental health evaluation and had no evidence of mania or hypomania; psychosis, hallucinations or delusions; impulsive, aggressive, reckless, or self-injurious behaviors; and no appetite disturbance. (Doc. 9-8, at 20). Bordner was further noted to have mild impairments of energy and motivation; anxiety; thinking, memory, and concentration; activities of daily living; and sleep disturbance. (Doc. 9-8, at 20) . Bordner was also found to have moderate impairments of depression or sadness; medical or physical conditions; and social and/or family problems. (Doc. 9-8, at 20). When next seen on March 14, 2014, Bordner's assessment was identical to that of February 14, 2014. (Doc. 9-8, at 19, 20). On April 10, 2014, Bordner was again found to have similar limitations and symptoms as her previous two assessments, except that her depressive symptoms were mild to moderate and she now displayed symptoms with regard to mild impulsive behaviors. (Doc. 9-8, at 18, 19, 20). On May 15, 2014, Bordner was evaluated again, and her symptoms and limitations were identical to those opined on April 10, 2014. (Doc. 9-8, at 17, 18). When assessed on June 6, 2014, the last time that she was seen and evaluated prior to the expiration of her date last insured, Bordner had no limitations or symptoms of mania or hypomania; no psychosis, hallucinations, or delusions; no impulsive, reckless, self-injurious, or aggressive behavior; and no symptoms or limitations of sleep or appetite disturbance. (Doc. 9-8, at 16). She was found to have mild limitations or symptoms in energy and

motivation; anxiety; thinking, memory, and concentration; and activities of daily living. (Doc. 9-8, at 16). Bordner was found to have moderate limitations or symptoms of depression or sadness, medical or physical conditions; and family and/or social problems. (Doc. 9-8, at 16). Bordner was seen on July 16, 2014 and August 1, 2014 and the same evaluations were made as her evaluation on June 6, 2014. (Doc. 9-8, at 14, 15, 16).

Dr. Stipe first evaluated Bordner on September 16, 2014. (Doc. 9-8, at 13). Dr. Stipe opined that Bordner had moderate to severe symptoms of depression or sadness. (Doc. 9-8, at 13). Dr. Stipe found Bordner had no limitations or symptoms of mania or hypomania; no psychosis, hallucinations, or delusions; no impulsive, reckless, self-injurious, or aggressive behavior; and no symptoms or limitations of sleep or appetite disturbance. (Doc. 9-8, at 13). She also found Bordner to have mild limitations or symptoms in energy and motivation; anxiety; thinking, memory, and concentration; and activities of daily living. (Doc. 9-8, at 13). Additionally, Dr. Stipe's opined that Bordner had moderate limitations or symptoms of medical or physical issues, and family or social problems. (Doc. 9-8, at 13). On October 24, 2014, when she saw Bordner for the second time, Dr. Stipe assessed Bordner with an improved evaluation of moderate depression or sadness and found that all other limitations were identical to those made in the September 16, 2014, treatment note. (Doc. 9-8, at 12). At her November 14, 2014, appointment, Bordner was evaluated and assessed to have symptoms or limitations identical to those found at her October 24, 2014, appointment. (Doc. 9-8, at 11). On December 5, 2014, Dr. Stipe evaluated Bordner and opined that her symptoms of sadness and depression had improved and were now mild and document the same findings as to all other symptoms as her November 14, 2014 evaluation. (Doc. 9-8, at 10). On December 6, 2018, Dr. Stipe stated that Bordner has a poor ability to remember

locations and work like procedures; understand and remember short, simple instructions; carry out short, simple instructions; understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual; sustain an ordinary routine without special supervision; work with, or near others without being distracted by them; make simple work-related decisions; complete a normal workday or workweek; perform at a consistent pace; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers and peers; and respond appropriately to changes in the work setting. (Doc. 9-10, at 29-30). Additionally, Dr. Stipe opined that Bordner has a fair ability to interact appropriately with the public; ask simple questions or request assistance; maintain socially appropriate behavior; adhere to basic standards of neatness and cleanliness; and a good ability to be aware of normal hazards and take appropriate precautions. (Doc. 9-10, at 30).

> The ALJ addressed Dr. Stipe's findings in his decision, stating:
>
> [T]his opinion is *not supported* by the objective medical evidence, including examination findings of intact recent and remote memory, appropriate insight and judgment, and a good general fund of knowledge (C6F), and is *inconsistent* with the rest of the evidence of record, including the claimant's indication that she takes care of a pet, that she cooks her own meals, she goes out independently and drives herself to and from places, and that she hangs out with friends frequently (C3E). . . . In stark contrast to Dr. Stipe's opinion at C11F, Dr. Stipe assessed the claimant with no mania/hypermania, no psychosis/hallucinations/delusions, no impulsive/aggressive/reckless/self-injurious, no sleep disturbance and no appetite disturbance; moderate for depression/sadness, moderate mental/physical conditions, moderate social and/or family problems, moderate anxiety, moderate job/school performance and mild for energy/motivation, mild thinking/memory/concentration, and mild activities of daily living at C5F on all 3 assessments.
>
> (Doc. 9-2, at 24) (emphasis added).

Here, the Court finds that the ALJ properly explained his reasoning with regard to the supportability and consistency of Dr. Stipe's opinion considering the record as a whole. As noted, *supra*, despite presenting with symptoms of depression and sadness, Bordner was consistently found to have mild limitations or symptoms in her memory and concentration, as well as her activities of daily living. (Doc. 9-8, at 14-20). The ALJ considered these findings and explained them in detail when weighing the opinion of Dr. Stipe. (Doc. 9-2, at 23-24).

As was noted by the Commissioner, the ALJ erred in phrasing when giving the opinion of state agency analyst John N. Grutowski, Ph.D. ("Dr. Grutowski") "great weight" and in giving the opinion of Dr. Stipe "little weight" rather than rendering a finding as to the "persuasiveness" of the opinions pursuant to the new regulations. (Doc. 9-2, at 23-24; Doc. 14, at 13-15). However, the Court finds such an error of phrasing to be harmless as it is clear that the ALJ found the opinion of Dr. Grutowski persuasive and the opinion of Dr. Stipe unpersuasive, thus remand on this issue would be a "useless formality." *See NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969); *see also Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011); *Renchenski v. Williams*, 622 F.3d 315, 341 (3d Cir. 2010); (Doc. 9-2, at 23-24). In his opinion, the ALJ stated that pursuant to the new regulations, "we will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those of your medical sources." (Doc. 9-2, at 23). As the ALJ did not give any opinion controlling weight, the Court finds that the ALJ has complied with the requirements of the new regulations, notwithstanding his improper use of language in doing so. (Doc. 9-2, at 23-24). The clear implication of the ALJ's decision is that he found Dr. Grutowski's opinion persuasive and that he found Dr. Stipe's opinion

unpersuasive. (doc. 9-2, at 23-24). Thus, the ALJ's improper phrasing was harmless error not warranting remand. *See NLRB*, 394 U.S. at 766 n. 6; *Astrue*, 649 F.3d at 195; *Renchenski*, 622 F.3d at 341.

Further, the ALJ adequately explains how Dr. Grutowski's opinion is supported by and consistent with the record. The ALJ states that Dr. Grutowski's opinion that Bordner

> has a mild limitation in understanding, remembering, or carrying out instructions, a mild limitation in interacting with others, a moderate limitation in concentrating, persisting, and maintaining pace, a mild limitation in adapting or managing oneself, and is capable of simple tasks (C1A) . . . is *supported* by the objective medical record, including examination findings of intact memory and an adequate fund of knowledge (C6F), and is *consistent* with the rest of the evidence of record, including the claimant's indication that she hangs out with friends several times a week, that she goes shopping in stores every month, that she gets places by driving herself, and that she does not need to be accompanied to go out (Hearing Testimony).

(Doc. 9-2, at 23) (emphasis added).

Thus, the ALJ clearly explained how Dr. Grutowski's opinion was supported by and consistent with evidence in the record.[4] (Doc. 9-2, at 23). *See Densberger*, 2021 WL 1172982, at *8 ("An ALJ is specifically required to 'explain how [he or she] considered the supportability and consistency factors' for a medical opinion.").

Because the ALJ has properly explained his reasoning with regard to the factors of supportability and consistency as to the opinions of Dr. Stipe and Dr. Grutowski per 20

---

[4] Additionally, Bordner argues that at the time that Dr. Grutowski rendered his opinion, the medical record was not complete. (Doc. 13, at 5-6). The Court find this argument unpersuasive. At the time that Dr. Grutowski rendered his opinion he was in possession of and reviewed all of the mental health treatment records from the relevant time period. (Doc. 9-3, at 2-4). The Court agrees with the Commissioner's argument that any evidence which was not reviewed by Dr. Grutowski at the time he rendered his opinion post-dated the date last insured. (Doc. 14, at 18-19).

C.F.R. § 404.1520c, he has properly fulfilled his duty in articulating the basis for his findings. (Doc. 9-2, at 23-24). The Court finds that the ALJ's reasoning in weighing the opinions of Dr. Stipe and Dr. Grutowski is supported by substantial evidence.

   B.   SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S RFC DETERMINATION

Bordner's last contention challenges the ALJ's RFC assessment. (Doc. 13, at 12-1). Assessing a claimant's RFC falls within the purview of the ALJ. 20 C.F.R. § 404.1546(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). "[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the *most* that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, 1996 WL 374184 at *2. In crafting the RFC, the ALJ must consider all the evidence of record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings, however, must be supported by the medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018). Applying this standard to the present record, the Court finds substantial evidence to support the ALJ's RFC determination.

Bordner argues that the ALJ's RFC assessment is not supported by substantial evidence. (Doc. 13, at 12). Specifically, Bordner asserts that the ALJ failed to consider Dr.

Stipe's opinion that she "has a 'poor ability' to do . . . the following: maintain a regular work schedule and be punctual; work at or near others without being distracted; complete a normal workday or workweek; perform at a consistent pace; get along with coworkers and peers; and accept instructions and respond appropriately to criticism from supervisors." (Doc. 13, at 13-14). Bordner asserts that "if the opinion of Dr. Stipe . . . is found persuasive, as argued [in her brief in support], Bordner is incapable of engaging in [substantial gainful activity] and is, therefore, 'disabled'". (Doc. 13, at 14). The Commissioner contends that "the ALJ properly discounted [the opinion of Dr. Stipe] because it was inconsistent with, and unsupported by, the record." (Doc. 14, at 20).

The Court finds that the ALJ properly conducted Bordner's RFC assessment. In crafting the RFC, the ALJ considered all of Bordner's severe and non-severe mental impairments, including her depression, anger and mood swings, and bipolar disorder. (Doc. 9-2, at 21). The ALJ explained that despite objective medical evidence that revealed that Bordner "consistently presented with a depressed and irritable mood," Bordner's "thought process and content was usually described as normal" and her more recent medical records suggest a steady improvement in her symptoms. (Doc. 9-2, at 22).

The ALJ considered the opinion evidence of record, including the opinions of Dr. Grutowski and Dr. Stipe. (Doc. 9-2, at 23-24). In his Mental RFC Assessment, Dr. Grutowski opined that Bordner suffered from no limitations with regard to understanding, remembering, sustained concentration, and persistence; that Bordner was not significantly limited in interacting with the general public; asking simple questions or requesting assistance; or accepting instructions and responding appropriately to criticism from supervisors, and maintaining socially appropriate behavior and adhering to basic standards of neatness and

cleanliness. (Doc. 9-3, at 7-8). However, Dr. Grutowski noted that Bordner does have social interaction limitations in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Doc. 9-3, at 8). Dr. Grutowski opined that Bordner would be capable of adapting to changes in the workplace but would have a moderate limitation in being aware of hazards, taking precautions, and in traveling alone to unfamiliar places. (Doc. 9-3, at 8). Additionally, Dr. Grutowski found that Bordner was capable of simple tasks. (Doc. 9-3, at 9). The ALJ found Dr. Grutowski's opinion persuasive, concluding that the opinion was supported by the objective medical records and was also consistent with Bordner's own statements regarding her daily activities. (Doc. 9-2, at 23). In addition, stated *supra*, the ALJ reasonably found the opinion of Dr. Stipe to be unsupported and inconsistent. (Doc. 9-2, at 23-24).

Lastly, the ALJ considered other evidence in crafting the RFC, including Bordner's own statements. (Doc. 9-2, at 21-24). For example, the ALJ considered Bordner's self-reported activities of daily living including statements that she spends time with friends, prepares her own meals and does laundry, drives herself, cares for a pet, and goes shopping at grocery stores. (Doc. 9-2, at 23). Additionally, as noted, *supra*, each of the evaluations performed by WellSpan during the relevant time period assessed Bordner to have a mild limitation with regard to her activities of daily living. (Doc. 9-8, at 14-21).

To reiterate, the Court may not substitute its judgment for that of the ALJ and is limited to determining whether the ALJ provided valid reasons for his evaluations and based his conclusions on substantial evidence. *Katz*, 2019 WL 6998150, at *1. Thus, because the ALJ provided adequate articulation for his RFC determination, which is grounded in substantial evidence, the Court finds no basis for disturbing the ALJ's RFC determination.

V. **C**ONCLUSION

Based on the foregoing, the Commissioner's decision to deny Bordner's application for disability benefits is **AFFIRMED** and final judgment shall be entered in favor of the Commissioner and against Bordner. The Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.


**Dated: January 18, 2022**                    *s/ Karoline Mehalchick*
                                               **KAROLINE MEHALCHICK**
                                               **Chief United States Magistrate Judge**